Willard v. Collamer.

---

C. W. WILLARD, *Survivor.* v. GEORGE W. COLLAMER.

*Book Account. Jurisdiction.*

When payment is made on book, and credited on the account, the debit side of the book will remain unchanged ; otherwise, if, by the agreement of the parties, the balance due be transferred to a new account.

The case of *Strong* v. *Fish*, 13 Vt. 277, approved.

BOOK ACCOUNT. It appeared from the auditor's report, that the plaintiff and Ferrand F. Merrill formed a law partnership in March, 1854, and that the plaintiff's account accrued during

that time. Twenty-two of the items charged in the plaintiffs account were for services rendered by the employment of the defendant in the action of ejectment; but it was claimed by the defendant that one Ira S. Town, his grantor, should pay these charges to the plaintiff, as he was liable to the defendant therefor; and it appeared that before the commencement of this suit, Town did pay said items to Merrill & Willard, amounting in all to $149 68. The plaintiff's entire account against the defendant, including said twenty-two items, amounted to about $190 00. This payment by Town was credited on the plaintiff's account. Subsequent to the payment by Town, the plaintiff handed to the defendant a bill, of which the following is a copy, as the account due from him :—

G. W. COLLAMER.

| | | |
|---|---|---|
| To term and att'y fee—self v. Chandler, | $5 | 00 |
| Service of writ—same case, | 2 | 80 |
| Paid Clerk, do., | 1 | 06 |
| To time and trouble, in matter, Langdon v. Dumas, | 3 | 00 |
| To bill of cost—foreclosure, v. Langdon & Tyler, | 25 | 00 |
| To writ, &c.—self v. Davis, | 1 | 00 |
| Service of same, | | 90 |
| To bill of costs in 3 suits, v. J. C. Paddock—$2 67 each, | 8 | 01 |

The defendant, at the hearing before the auditor, and also in the county court, claimed that the county court had not original jurisdiction of the suit, for the reason that the debit side of the plaintiff's book was less than $100 at the time the suit was brought.

It further appeared from the report of the auditor that, in 1850, Mr. Merrill, afterwards of the firm of Merrill & Willard, applied to the defendant to help him to money to take up a mortgage, held by one J. R. Langdon, upon his house, amounting to $1,600, and to take a new mortgage for the same, running directly to himself, and offering the defendant to pay him nine per cent. for the use of said money; that the defendant did take up the Langdon mortgage as requested, and took a new mortgage, running to himself; and that Mr. Merrill paid the defendant six per cent. thereon, though he offered to pay the defendant more. After the decease of Mr. Merrill, the defendant sold the

mortgage, and received the principal and 6 per cent. interest thereon.

It further appeared that at a time subsequent to the payment of the Langdon mortgage by the defendant, Mr. Merrill requested the defendant to purchase some notes against him, secured by mortgages, amounting to about $1300, and agreed, if he would do so, to pay him 9 per cent. for the same, or make it as good as 9 per-cent. to him; that the defendant made the purchase, relying upon this agreement; and after keeping the notes and mortgages, so purchased, a while, at the request of Mr. Merrill, sold them at a discount of twenty-five dollars; and this occurred before the formation of the partnership with Mr. Willard.

It further appeared that before this account in offset of the defendant accrued, Mr. Merrill agreed with the defendant that he would perform professional services for him, in payment for his services in raising the money to take up the mortgages aforesaid; and also that since the defendant's account accrued, and after the formation of the partnership between Merrill and the plaintiff, Merrill agreed with the defendant that his services should apply towards the defendant's account; but it did not appear that Merrill made any arrangement with the plaintiff to that effect. But the plaintiff, in the life-time of Merrill, and after the dissolution of the co-partnership, told the defendant that any way he could settle the account with Merrill would be satisfactory to him; and after the dissolution of the firm, Mr. Merrill again agreed that the plaintiff's account should apply towards the 9 per cent. and other items charged in the defendant's account.

The county court, March term, 1861, PECK, J., presiding, rendered judgment in favor of the plaintiff for the largest sum found by the auditor, to which decision the defendant excepted.

*Wing, Lund & Taylor,* for the defendant.

*Timothy P. Redfield,* for the plaintiff.

ALDIS, J. I. The account as originally charged on the plaintiff's book was about $190. This remained the debit

side of the book while that account was open. If that had been balanced and closed by. agreement of the parties when Town paid the $149, and the balance ($48.64) had been trans- ferred to a new account, then such balance would have been the debit side of the plaintiff's book. But Town's payment was simply credited on the account, and the account left open and not settled and closed ; hence the debit side remained as be- fore ; and the jurisdiction of the county court is sustained. *Reed* v. *Talford*, 10 Vt. 568.

II. The defendant sold the notes and mortgage which he had bought for Merrill to Trow, at Merrill's request, and at a dis- count of $25. It seems obvious that Collamer ought not to lose the $25, when the act which produces the loss is done not for himself but for Merrill. We think he is to be regarded in the sale as acting for Merrill—as his agent. It is a just debt as against Merrill, and was so regarded by him, for he agreed to pay for it in professional services.

Is it a proper offset on the account of Merrill & Willard ?

Before the partnership was formed Merrill promised the de- fendant to pay him in professional services. After Merrill & Willard were partners, and the defendant had employed them in the business here charged, Merrill again agreed that their ac- count should apply on the defendant's debt ; and both Merrill and the defendant conversed with Willard and he fully assented to the arrangement. Thus we have the prior agreement of one partner that this debt should be paid in professional services. We may well infer that the firm was employed to render the ser- vices by the defendant upon the faith of this promise, and we have the subsequent assent of all the parties to this prior agree- ment of Merrill.

The cases of *Fay et al.* v. *Green*, 1 Aik. 71, and *Strong* v. *Fish*, 13 Vt. 277, go quite beyond this. See the dictum also in 17 Vt. 237. Here the subsequent assent of Willard may be re- garded as fully ratifying the previous agreement of Merrill. It is not necessary for us, therefore, to inquire whether one partner can apply the partnership property to pay his private debt with- out the assent of his co-partner, or what is the extent and what the limits of the rule on that subject.

---

Upon this basis the plaintiff would be entitled to recover only the $32.14 and interest from April 1, 1861.

The other charges in the defendant's account for raising money on the Langdon and Trow mortgages seem, upon the auditor's finding, to be merely charges to cover usury, and are not allowed.

Judgment reversed as to the larger sum, and judgment for the $32.14 and interest from April 1, 1861.